UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

In re MAYRA DIAZ KALISCH, Debtor.

-----------------------------------------------------------x
MAYRA DIAZ KALISCH,

                     Appellant,                       09 Civ. 1636 (PKC)

      -against-

                                                  MEMORANDUM AND ORDER

MAPLE TRADE FINANCE CORPORATION,

                     Appellee.
-----------------------------------------------------------x

P. KEVIN CASTEL, U.S.D.J.:

       This is an appeal by the debtor, Mayra Diaz Kalisch, from the January 16, 2009 judgment of the Bankruptcy Court (James M. Peck, U.S.B.J.), in favor of Maple Trade Finance Corp. ("Maple Trade"). The appeal arises from two adversary proceedings, consolidated for trial in the Bankruptcy Court, brought by debtors Mark Allen Kalisch ("Marco") and Mayra Kalisch (collectively the "Kalischs") challenging the validity, priority and enforceability of a security interest granted by Marco to Maple Trade in certain shares of stock in 2 East 12th St. Owners Corp. (the "Co-op") and associated proprietary leases relating to three combined units on the ground floor of a townhouse at 2 East 12th Street in Manhattan (the "Apartment"). Marco pledged the shares and leases as collateral for a loan from Maple Trade to Marco Kalisch Imports ("MKI"), Marco's business vehicle. Marco also guaranteed repayment by MKI.

       The loan was in default and Marco asserted the defense of in pari delicto to the claim of Maple Trade for repayment. Marco argued that the loan was used by MKI to finance an

illegal diamond venture in Brazil. Maple Trade asserted that it had no knowledge of any illegal activity by Marco or MKI.

Mayra relied on Marco's in pari delicto arguments. She also argued that Marco was not the sole owner of the Apartment and that she was co-owner even though her ownership interest was not reflected on the face of the shares of the Co-op or the proprietary leases. She further argued that Maple Trade was on inquiry notice of her ownership interest and, thus, was not a bona fide lien holder.

The Bankruptcy Court conducted a three-day trial at which both Marco and Mayra testified. At the conclusion of the trial, the Bankruptcy Court issued a memorandum decision granting judgment in favor of Maple Trade. In re Mark Allen Kalisch, 2008 WL 5611810 (Bankr. S.D.N.Y. Dec. 31, 2008).

Mayra now appeals. For the reasons set forth below, the Bankruptcy Court's judgment is affirmed.

## Jurisdiction and Standard of Review

This Court has jurisdiction to hear an appeal from a final judgment of the Bankruptcy Court. 28 U.S.C. § 158(a)(1). A timely notice of appeal was filed by Mayra Kalisch on February 23, 2009.

The Bankruptcy Court's findings of fact are reviewed on a clearly erroneous standard and its conclusions of law are reviewed de novo. Pierce v. Underwood, 487 U.S. 552, 558 (1988); Rule 8013, Fed. R. Bankr. P.; In re CBI Holding Co., Inc., 529 F.3d 432, 449 (2d Cir. 2008). Due regard is accorded to the Bankruptcy Court's assessment of the credibility of witnesses. Rule 8013.

## Discussion

The Bankruptcy Court applied the correct legal standards to the claims of the parties and made no clear error in its factual determinations.

The Bankruptcy Court found that Maple Trade had no actual or imputed knowledge of MKI's illegal activities and that finding was not clearly erroneous. Marco acknowledged making misrepresentations for the purpose of securing the loan from Maple Trade:

> Q. Isn't it true that in order to get the loan approved by Maple you made numerous misrepresentations in the loan documents in order to close?
> A. I think that's been established.

(Trial Tr. 112, July 24, 2008.)

> Q. Isn't it true that even in describing to Jim Culver the origin of the diamonds that Marko Kalisch Inc. would be buying from M3, you did not disclose that M3 would be paying bribes?
> A. I explained to Mr. Culver what the function of M3 was and he accepted that explanation apparently because he didn't ask me any further questions.
> Q. Is that a yes or a no? Did you disclose that M3 would be paying bribes to Mr. Culver?
> A. It's basically the same answer. I might add . . . I certainly in explicit terms explained it to Mr. Janovich and I certainly believe that Mr. Janovich was speaking with Mr. Culver. And so I was therefore extremely relieved that Mr. Culver never asked the question. It wasn't necessary.
> Q. So since it was never asked, you never disclosed.
> A. Correct.

(Trial Tr. 78-79, July 24, 2008.)

No witness for Maple Trade admitted to facts that would cause a reasonable person to believe or suspect that Marco and/or MKI were engaging in illegal conduct. James Culver, an agent for Maple Trade, denied any knowledge of use of the money for an illegal

Case 1:09-cv-01636-PKC   Document 22   Filed 09/09/09   Page 4 of 6

4

diamond-mining venture in Brazil. (Trial Tr. 32, 90, July 23, 2008.) At most, the circumstantial evidence would allow competing inferences. The conclusions reached by the Bankruptcy Court were not clearly erroneous.

The Bankruptcy Court's conclusion that Victor Janovich was not an agent of Maple Trade was not clearly erroneous.[1] "Agency is a legal concept that depends on the existence of three elements: (1) 'the manifestation by the principal that the agent shall act for him'; (2) 'the agent's acceptance of the undertaking'; and (3) 'the understanding of the parties that the principal is to be in control of the undertaking.'" Cleveland v. Caplaw Enters., 448 F.3d 518, 522 (2d Cir. 2006) (quoting Cabrera v. Jakabovitz, 24 F.3d 372, 385 (2d Cir. 1994)).

The Bankruptcy Court concluded that Maple Trade had not delegated any power to Janovich and that he functioned as a "deal finder." Kalisch, 2008 WL 5611810, at *12. This factual conclusion was supported by the record. (Trial Tr. 35–36, July 23, 2008.). Neither party attempted to procure Janovich's attendance at deposition or trial, and he was equally available to both. The Bankruptcy Court did not err in failing to draw an adverse inference from Janovich's failure to testify.[2]

There was no clear error in the Bankruptcy Court's factual determination that Mayra was not a co-owner of the Apartment. It was undisputed that she was not a title holder of record. Under New York law, "reformation of titled documents is permitted, but only if it would not prejudice the rights of a bona fide purchaser or subsequent lien holder." Kalisch, 2008 WL

---

[1] Victor Janovich was a friend of both Marco Kalisch and James Culver. He is a person who was known to Culver as a potential source of borrowers for Maple Trade in Latin America. MKJ and Marco were introduced to Culver and Maple Trade by Janovich. (JPTO, Undisputed Facts at 12).

[2] "A missing witness charge, which allows the jury to draw an adverse inference from a party's failure to call a witness is appropriate where 'the complaining party . . . establish[es] that the missing witness was peculiarly in the power of the other party to produce. This can be shown in two ways: (1) that the witness is physically available only to the opponent; or (2) that the witness has a relationship with the opposing party that practically renders his testimony unavailable to the moving party.'" Ranish v. Delta Airlines, Inc., 89 F.3d 826 (2d Cir. 1995); (quoting Oxman v. WLS-TV, 12 F.3d 652, 661 (7th Cir. 1993)).

5611810, at *18 (citing Burlingham v. Hanrahan, 251 N.Y.S. 55, 61 (N.Y. Sup. Ct. 1931)).[3]

Additionally, under New York law, "matters outside the chain of title do not constitute notice." Doyle v. Lazarro, 33 A.D.2d 142, 144 (3d Dep't 1970).

Marco made several representations that he was the sole owner of the property. (Loan Security Agreement at Section 1.) For example, under Section 14 of the Loan Security Agreement, Marco represented to Maple Trade as follows:

> I represent to you that I am the sole owner of the Security provided under this Agreement, and have the full right to give the Security Interest to you. I represent that no person or company has any interest in, lien or encumbrance on, or claim against, the Security or any right to sell all or any part of the Security if I fail to pay any debt I owe them, except the Corporation, Emigrant Savings Bank, and The Bank of New York. . . .

(JPTO Undisputed Facts at 15). The Co-op confirmed to the lender that Marco was the sole owner of the property. (E.g., Recognition Agreement at Section 3.) It was only after Maple Trade's notice of default that a transfer of ownership was made to Mayra.

There was no clear error in the Bankruptcy Court finding that Marco was the sole owner of the Apartment at the time Maple Trade acquired a security interest. Maple Trade's examination of the title documents and the representations made to it by Marco were sufficient to support the Bankruptcy Court's conclusion that Maple Trade was a bona fide lien holder.

---

[3] "Property interests are created and defined by state law." Butner v. United States, 440 U.S. 48, 55 (1979). "Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." Id.

## Conclusion

For the foregoing reasons, the judgment of the Bankruptcy Court is AFFIRMED.

SO ORDERED.

*[signature]*

P. Kevin Castel
United States District Judge

Dated: New York, NY
September 3, 2009